# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DIANTHA S., <br><br> Claimant, <br><br> v. <br><br> ANDREW SAUL, Commissioner <br> of Social Security, <br><br> Respondent. | No. 18 CV 7909 <br><br> Magistrate Judge Jeffrey T. Gilbert |

## MEMORANDUM OPINION AND ORDER

Claimant Diantha S.[1] ("Claimant") seeks review of the final decision of Respondent Andrew Saul,[2] Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 8]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c). The parties have filed cross-motions for summary judgment [ECF Nos. 20, 28] pursuant to Federal Rule of Civil Procedure 56. For the reasons discussed below, Claimant's Motion for Summary Judgment [ECF No. 20] is denied and the Commissioner's Motion [ECF No. 28] is granted.

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. Pursuant to Federal Rule of Civil Procedure 25(d), the Court has substituted Commissioner Saul as the named defendant.

**PROCEDURAL HISTORY**

On January 23, 2015, Claimant filed a Title II application for DIB alleging disability beginning on November 6, 2014.[3] (R. 208-14). Her claim was denied initially and upon reconsideration, after which Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (R. 114-18, 123-29). On April 17, 2017, Claimant appeared and testified at a hearing before ALJ Deborah M. Giesen. (R. 53-86). ALJ Giesen also heard testimony on that date from vocational expert ("VE") Pamela Shelton. (R. 53-86). On September 28, 2017, ALJ Giesen denied Claimant's claim for DIB. (R. 36-44).

In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. See 20 C.F.R. § 416.920(a). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since her alleged disability onset date of November 6, 2014. (R. 38-39). At step two, the ALJ found that Claimant had a severe impairment or combination of impairments as defined by 20 C.F.R. 404.1520(c) and 416.920(c). (R. 39). Specifically, Claimant suffered from degenerative disc disease of the cervical spine, status post discectomy and C4-C5 fusion, and degenerative disc disease of the lumbar spine with spondylosis and stenosis. (R. 39). These severe impairments, according to the ALJ, "significantly limit [Claimant's] ability to perform basic work activities." (R. 39). The ALJ also acknowledged several non-severe complaints – idiopathic leukocytosis and thrombocytosis; chronic bronchitis, asthma, other respiratory impairments; osteoarthritis in the right knee; macular pigment disorder, astigmatism, and dry eye syndrome; obesity; and anxiety – but concluded they did not cause work-related limitations. (R. 39). The ALJ also specifically noted

---

[3] The relevant period in this case is November 6, 2014 to September 14, 2017 – the alleged date of disability onset through the date of the ALJ's decision.

that she would consider whether Claimant's obesity was an aggravating factor to any other severe impairment. (R. 39).

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 39-40). In particular, the ALJ paid "particular attention" to listing 1.04 regarding spinal disorders but concluded that because Claimant was able to ambulate effectively and perform fine and gross movements with both upper extremities, she did not meet the listing criteria. (R. 39-40). On that point, the ALJ was also persuaded by the fact that the record did not contain an opinion from a designated medical source that Claimant had an impairment or combination of impairments that equaled a listed impairment. (R. 40).

The ALJ then found Claimant had the RFC,[4] through Claimant's date last insured, to:

> "perform sedentary work as defined in 20 CFR 404.1567(a) with lifting and carrying up to ten pounds; sitting more than six hours in an eight hour day; standing and walking up to two hours in an eight hour day; no climbing of ladders, ropes, or scaffolds; frequent climbing of ramps or stairs, occasional balancing, stooping, kneeling, crouching, and crawling; occasional overhead reaching; no exposure to hazards such as unprotected heights, open flames, or dangerous moving machinery; and an opportunity to change positions between sitting and standing every hour."

(R. 40).

Based on this RFC, the ALJ found at step four that Claimant had past relevant work as an Administrative Assistant. (R. 43). The ALJ then concluded that, after comparing Claimant's RFC to the physical and mental demands of an Administrative Assistant and the description contained in the Dictionary of Occupational Titles ("DOT"), Claimant was capable of performing that work

---

[4] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

3

as it is generally performed. (R. 43). The ALJ then found Claimant was not disabled under the Act. (R. 43).

The Appeals Council granted Claimant's request for review on May 1, 2018 and issued a written decision on October 3, 2018 explaining that Claimant was not entitled to benefits. (R. 4-8, 197-98, 200-06). The Appeals Council first commented on three additional pieces of evidence Claimant submitted: (1) a cervical MRI dated April 10, 2017 comprising four pages; (2) a single page of laboratory results dated August 24, 2017; and (3) three pages of treatment notes from John Hong, M.D., dated January 22, 2018. (R. 4). The first two pieces of evidence, the Appeals Council reasoned, did not show a reasonable probability of changing the outcome of the decision, and the third piece of evidence did not affect the disability determination because it post-dated the relevant period. (R. 4). The Appeals Council then adopted the ALJ's "statements regarding the pertinent provisions of the Social Security Act, Social Security Administration Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case, [] the evidentiary facts, as applicable," and the "findings or conclusions regarding whether the claimant is disabled," and agreed that Claimant had the RFC to:

> "perform sedentary work as defined in 20 CFR 404.1567(a). The claimant cannot climb ladders, ropes, or scaffolds. The claimant can frequently climb ramps or stairs and occasionally stoop, kneel, crouch, crawl, and reach overhead. The claimant should have no exposure to hazards such as unprotected heights, open flames, or dangerous moving machinery. The claimant should have the opportunity to change positions between sitting and standing every hour."

(R. 6).

Because "the mental listings…[and] the four broad functional areas ha[d] changed since the State agency opinions were rendered," the Appeals Council next elaborated on the limitations caused by Claimant's anxiety. (R. 5). Specifically, with respect to the four broad functional areas, the Appeals Council added that Claimant had no limitations in her ability to understand, remember,

4

or apply information; interact with others; concentrate, persist, or maintain pace; or adapt or manage herself. (R. 5-6). The Appeals Council also explained the weight it afforded to the medical and other opinions of record, including opinions from the state agency medical consultant and Claimant's surgeon, the third-party function report completed by Claimant's daughter, and Claimant's own subjective symptom statements. (R. 6-7). Ultimately, the Appeals Council agreed with the ALJ's determination that Claimant was capable of performing her past work as an administrative assistant and that she therefore was not under a disability from November 6, 2014 through September 14, 2017. (R. 7-8).

"[B]ecause the Secretary has delegated its authority to make final decisions to the Appeals Council," it is the Appeals Council's decision that constitutes the Secretary's final decision for purposes of judicial review under 42 U.S.C. § 405(g). *Bauzo v. Bowen*, 803 F.2d 917, 921 (7th Cir.1986) (citations omitted). The decision of the Appeals Council is therefore final and reviewable by this Court. *Id.*

## STANDARD OF REVIEW

The Court's analysis begins with the well-established principle that federal courts may review only the Secretary's final decisions. *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (citing *Califano v. Sanders*, 430 U.S. 99, 108 (1977)). The Appeals Council granted review in this case and, with a few modifications, adopted the ALJ's factual and legal conclusions in their entirety. Therefore, the Court must review both the Council's decision and the ALJ's underlying opinion as modified. 20 C.F.R. § 404.981; *see, e.g., Arbogast v. Bowen,* 860 F.2d 1400, 1402–03 (7th Cir. 1988) ("We therefore review the decision of the Appeals Council rather than the decision of the ALJ. However, in this case, the Appeals Council explicitly adopted, as modified, the opinion

of the ALJ. Accordingly, we must review the decision of the ALJ as modified by the Appeals Council.").

The Appeals Council is held to the same standard as the ALJ. *Sanford v. Berryhill*, 2018 WL 539804, at *3 (N.D. Ill. 2018) (citing *Bauzo*, 803 F.2d at 923). Judicial review is limited to determining whether the ALJ's decision – adopted and slightly modified by the Appeals Council here – is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). This Court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also, Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Biestek,* 139 S. Ct. at 1154; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however,

"displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

### I.  The Assessment of Claimant's Subjective Symptom Allegations

Claimant first argues that the Appeals Council and the ALJ improperly cherry-picked facts from the objective medical record – in particular, evidence that Claimant's pain improved in some areas over time – in order to minimize Claimant's subjective symptom reports of back, neck, and arm pain. [ECF No. 20] at 6-13. To the contrary, the Appeals Council and the ALJ explained their reasoning in a rational manner, "logically based on [] specific findings and the evidence in the record." *Murphy*, 759 F.3d at 816 (internal quotations omitted). Their analysis was not patently wrong, as explained below.

"A claimant's assertions of pain, taken alone, are not conclusive of a disability." *Zoch v. Saul,* 981 F.3d 597, 601 (7th Cir. 2020) (citing 42 U.S.C. § 423(d)(5)(A)). Instead, an ALJ should evaluate a claimant's subjective symptom statements consistent with SSR 96–7p, which "provides a two-step test for adjudicators to follow when evaluating a claimant's symptoms such as pain." *Maske v. Astrue*, 2012 WL 1988442, at *11 (N.D. Ill. 2010). First, "the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)…that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96–7p., 61 Fed. Reg. at 34484. Second, if there is such an impairment, "the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id*. at 34485. The ALJ must justify his or her subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and in doing so, may consider several

factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, *7-8 (Oct. 25, 2017). The ALJ's credibility determination will be upheld unless it is "patently wrong." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Murphy v. Colvin,* 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support.").

As discussed above, the Court is tasked with reviewing the decision of the Appeals Council rather than the decision of the ALJ. There is, however, considerable overlap between the two decisions regarding Claimant's subjective symptom allegations, as the Appeals Council specifically adopted the ALJ's reasoning on this point and provided only a short (and largely duplicative) explanation of its own. As relevant here, the Appeals Council explained that it adopted the ALJ's "finding that the claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with medical evidence and other evidence in the record." (R. 7). It did so for several reasons, including that:

> "The claimant's pain was treated with, and responsive to, epidural steroid injections with relief for approximately one year (Exhibit 2F). The claimant's condition was stable through examinations in late 2015, at which time she restarted pain medication and surgery was recommended (Exhibits 7F and 10F). Six months after the anterior C4-C5 discectomy and fusion, the claimant reported that she was pleased with the progress and canceled several physical therapy appointments (Exhibits 13F and 14F). However, the claimant reported no significant improvement to her pain specialist (Exhibit 19F). Between June 2016 and February 2017, the claimant regularly reported improvement in her pain symptoms and indicated that she had been reducing her use of narcotic pain medication. The claimant's reported improvement coincides with her return to part-time work as a caregiver in 2017)."

(R. 7).

So, the Court's review on this issue must predominantly focus on the substance of the ALJ's credibility determination. The ALJ concluded that Claimant's subjective complaints of pain – namely, back and neck pain she says often leaves her unable to drive, sit, or stand – were not

8

consistent with the factors contemplated by SSR 96–7p. The ALJ cited to objective medical evidence, Claimant's activities of daily living, and other record evidence in support of her opinion. The Court considers the ALJ's explanation and conclusion on each of these factors in turn.

"[D]iscrepancies between the objective evidence and self-reports may suggest symptom exaggeration." *Jones*, 623 F.3d at 1161; *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir.2008); *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir.2005). Here, the ALJ pointed to several objective medical findings that, in her judgment, conflicted with Claimant's subjective symptom reports, which predominantly involved pain in her back, neck, or arm. Other than a short period around December 2015 when Claimant had increased reports of spinal discomfort and underwent anterior C4-C5 discectomy and fusion, the ALJ explained – in almost a full page of discussion and meticulous review of the medical evidence in the case – that Claimant's cervical condition was stable and well-managed during the relevant period. Specifically, before her surgery in December of 2015, Claimant's pain was "stable," "her lumbar range of motion was much improved since her consultative examination," and she had "good motor strength, intact sensation, negative straight leg raise, and symmetric reflexes." (R. 41). After her surgery, she "reported she was pleased with the progress," and between June 2016 and February 2017, she "regularly reported improvement in her pain symptoms and indicated that she had been reducing her use of narcotic pain medication, despite consistently rating her pain at five to seven on a ten-point index (Exhibit 19F)." (R. 41-42). She also reported in February of 2017 that her pain was "well controlled," (R. 42), a finding that the ALJ found was consistent with Claimant's return to part-time work in January of 2017.

An ALJ cannot ignore evidence that conflicts with her conclusion, *Briscoe*, 425 F.3d at 354, but the ALJ did not do so here. The ALJ specifically took note of many of the facts that Claimant now argues on appeal should have been dispositive; for example, that Claimant reported

no significant improvement (or no significant "additional" improvement, as Claimant points out) of her pain to her pain specialist and that, at one appointment in May of 2016, she rated her pain at a 10/10. [ECF No. 20] at 9; (R. 42). But the ALJ concluded, based on her review of Claimant's medical history, that the weight of the objective evidence did not support the severity of these isolated self-reported symptoms. Similarly, Claimant argues that the ALJ "failed to consider the fact that, following her neck surgery, [Claimant] underwent five epidural steroid injections in her cervical, thoracic, and lumbar spine." [ECF No. 20] at 10. But both the Appeals Council and the ALJ specifically considered this fact, although they did not afford it the significance Claimant prefers. (R. 7) ("The claimant's pain was treated with, and responsive to, epidural steroid injections with relief for approximately a year (Exhibit 2F)."); (R. 40) (same); (R. 41) (Claimant "underwent several epidural steroid injections in her cervical and lumbar spine (Exhibit 19F). Between June 2016 and February 2017, the claimant regularly reported improvement in her pain symptoms and indicated that she had been reducing her use of narcotic pain medication, despite consistently rating her pain at five to seven on a ten-point index (Exhibit 19F)."). Both the Council and the ALJ concluded that Claimant's epidural injections – and the relief she experienced afterwards – were part of Claimant's ongoing, and conservative, course of treatment and that these injections in fact helped Claimant follow a trajectory of improvement and return to part-time work in 2017. If the ALJ's credibility assessment finds "some support" in the record, *Berger*, 516 F.3d at 546, it will not be disturbed – regardless of how this Court of review might have viewed the matter or weighed the evidence itself. The ALJ was not simply required to accept Claimant's subjective complaints to the extent they clashed with other, objective medical evidence in the record. *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007).

SSR 96–7p recognizes "the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," which is why the ALJ should also consider other evidence "when assessing the credibility of an individual's statements." 20 C.F.R. §§ 404.1529(c), 416.929(c). In that vein, the ALJ next identified activities of daily living that she saw as incompatible with the degree of disability Claimant alleged. *See. e.g, Adams v. Astrue*, 880 F. Supp. 2d 895, 907 (N.D. Ill. 2012) (the ALJ properly considered the claimant's daily activities, which included performing household chores and using public transportation, in determining the extent of Claimant's alleged symptoms); *see also,* 20 C.F.R. § 404.1529(c)(3)(i) (explaining that other evidence, including daily activities, is an "important indicator of the intensity and persistence of [claimants] symptoms."). Claimant drives to the grocery store, to work, and occasionally takes her son to school. (R. 40, 68). If she drives for an hour or two, however, she explained that she gets pain and stiffness in her hip and lower back that requires her to get out and stretch. (R. 40-41). Claimant also works eighteen to twenty hours a week as a caretaker, a job that involves companionship, talking, assisting with "morning breakfast or lunch which may consist of a bowl [of] cereal or fruit or soup or a sandwich," driving a client to "the senior services facility for activities," and assisting a different client with "grocery shopping, taking her to the grocery store to get her groceries." (R. 64). The ALJ took note of Claimant's explanation that her physical limitations prevent her from working any more than that, (R. 40-41), including Claimant's testimony during the hearing that she returned to part-time work only because needed to do so "in order to maintain her public aid." (R. 76). The Appeals Council echoed the ALJ's assessment of Claimant's activities of daily living, and added, in the context of Claimant's functional capacity assessment, that Claimant was able to perform her activities of daily living independently. (R. 6).

The ALJ weighed the above-described activities of daily living and reasonably concluded that, on balance, they undercut Plaintiff's own subjective testimony about her symptoms and impairments. *Burmester*, 920 F.3d at 510 ("The ALJ did not equate Burmester's ability to perform certain activities of daily living with an ability to work full time. Instead, he used her reported activities to assess the credibility of her statements concerning the intensity, persistence, or limiting effects of her symptoms consistent with the applicable rules."). In particular, the ALJ's reliance on the fact that Claimant was able to drive, pick up groceries, and run errands for several elderly clients for up to twenty hours a week was substantial and convincing evidence that Claimant was not as disabled as she portrayed herself to be.

Similarly, the ALJ pointed to Claimant's course of treatment as another factor supporting her credibility determination. As discussed above, the ALJ and the Appeals Council both noted that Claimant improved quickly after her surgery in December of 2015. This improvement was consistent with her surgeon's recommended course of treatment: "a conservative treatment approach with limited fusion while understanding that more surgery may have been required in the future." (R. 700). Similarly, Claimant responded well to epidural injections as part of her pain management and herself noted that her pain was brought down or improved after those treatments. (R. 7, 41-42); (R. 722) ("On patient's last visit, she reported a moderate amount of pain approximately 5/10 that she feels was brought down by her last cervical injection."). These factors – medication and treatment – are specifically contemplated 20 C.F.R. § 404.1529(c) and also helped the ALJ build a logical bridge between the evidence and her conclusion that Claimant's testimony was not entirely credible.

Finally, not only did the ALJ rationally articulate how Claimant's subjective symptoms were inconsistent with the medical and other evidence, but some of Claimant's allegations

12

contradicted her own statements at the hearing and to treating physicians. For example, Claimant testified that because of her physical limitations, she cannot lift more than twenty pounds; in her function report, she explained that she cannot lift more than five pounds; and during a post-surgery follow-up with her treating physician, Dr. Chintan S. Sampat, Claimant received work restrictions with no frequent lifting more than 10 pounds. (R. 40). Similarly, Claimant noted in her function report that she is "[u]nable to drive, sit or stand due to chronic debilitating conditions" and "[i]n addition to constantly being in pain, [her] medications [make her] unable to drive." (R. 40, 247). Yet Claimant testified that she drives to and from work, the grocery store for both herself and her clients at work, and occasionally to her son's school. (R. 40, 64). She also told her physical therapist in early 2016 that she still drives and is able to "complete ADLs," or activities of daily living. (R. 717). Claimant also testified that even before the surgery (which she credits for some of her improvement in 2017), she could sit for a couple of hours, or stand for an hour at a time, before needing to change position. (R. 42). SSR 96–7p advises that "[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." The ALJ and the Appeals Council therefore were not patently wrong insofar as they interpreted Claimant's prior inconsistent statements as indicative of exaggerated symptom reports.

In sum, the ALJ and the Appeals Council considered Claimant's pain and evaluated the relevant evidence of record, including the objective medical evidence, Claimant's course of treatment, Claimant's activities of daily living, and the internal inconsistencies in Claimant's own testimony. But after considering this evidence, the ALJ and the Appeals Council simply did not believe Claimant's pain was as debilitating as she claimed. Nor were they required to do so. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (The "administrative law judge did not have

to believe [Claimant's testimony]."). Instead, their obligation was "to rationally articulate the grounds for…decision," *Steele v. Barnhart,* 290 F.3d 936, 941 (7th Cir. 2002), which they did here. Particularly given that credibility determinations are due special deference as factual findings, *Matthews v. Saul,* 833 F. App'x 432, 438 (7th Cir. 2020), Claimant offers no meaningful reason the ALJ's and the Appeals Council's credibility determinations should not be upheld, nor does this Court believe the ALJ or the Appeals Council was patently wrong in this case. Unlike this Court, the ALJ "had the opportunity to observe the claimant testifying, and, as Justice Jackson rightly observed more than a half-century ago, 'a few minutes observation…in the courtroom is more informing than reams of cold record.'" *Brenda L. v. Saul*, 392 F. Supp. 3d 858, 864 (N.D. Ill. 2019) (quoting *Ashcraft v. State of Tenn.,* 322 U.S. 143, 171 (1944) (Jackson, J., dissenting)). The credibility determination by the ALJ and Appeals Council will stand.

## II. The ALJ and Appeals Council Properly Weighed Dr. Kareti's Opinion

Claimant also argues that the Appeals Council – and the ALJ, by extension – failed to properly grapple with Dr. Prasad Kareti's opinion. This argument has no traction.

Dr. Kareti is a state agency consultant who opined, in relevant part, that Claimant could occasionally lift 20 pounds, frequently lift 10 pounds, stand and walk for up to six hours per day, sit for about six hours per day, frequently climb ramps and stairs, occasionally climb ladders, ropes, or scaffolds, frequently crawl, and that she had no limitations on balancing, stooping, kneeling, or crouching. (R. 109-110). He also opined that plaintiff could only occasionally reach overhead, had no limitations on handling or fingering, and could only occasionally feel with her right arm or hand. (R. 109-111); (R. 42). The ALJ afforded Dr. Kareti's opinion strong weight but concluded that the limitations to only occasional feeling and avoiding concentrated exposure to pollutants

14

were not supported by objective evidence in the record. (R. 42). The Appeals Council was in accord and adopted the ALJ's finding on this point. (R. 6).

Claimant argues that the ALJ improperly rejected the occasional reaching overhead and only occasional feeling with her right arm portions of Dr. Kareti's opinion. She adds that this error was not harmless because the VE testified that if Claimant were limited to only occasional fine or gross manipulation, Claimant would not be able to perform any of her past relevant work. [ECF No. 20] at 14. However, regarding the limitation to only occasional reaching overhead, the ALJ did incorporate this limitation into the RFC, as did the Appeals Council: (R. 6); (R. 40) ("…frequent climbing of ramps or stairs, occasional balancing, stooping, kneeling, crouching, and crawling; **occasional overhead reaching**; no exposure to hazards such as unprotected heights, open flames, or dangerous moving machinery…") (emphasis added). Therefore, Claimant's argument in this regard is unsupported by the record.

Turning next to Claimant's manipulative limitations, Claimant either misunderstands or mischaracterizes the substance of Dr. Kareti's opinion when she describes it as inconsistent with the VE's testimony. In fact, Dr. Kareti specifically opined that Claimant had an "unlimited" capacity for handling and fingering and recommended only occasional feeling limitations involving Claimant's right arm or hand. (R. 110-11) ("<u>Rate the individual's manipulative limitations:</u> **Reaching any direction (including overhead):** Limited, Left Overhead, Right Overhead. **Handling (gross manipulation):** Unlimited. **Fingering (fine manipulation):** Unlimited. **Feeling (skin receptors):** Limited, Right.") (emphasis in original). Based on the plain language of Dr. Kareti's opinion and the DOT itself, "feeling" is a category separate and apart from "fine" or "gross" manipulation. It was the latter that the VE testified might impact Claimant's ability to perform her past relevant work, not the former. Even were the two analogous, however,

15

the Commissioner correctly points out that the ALJ was entitled to weigh Dr. Kareti's opinion against objective and other evidence and ultimately conclude that the feeling limitation was not supportable by the record. (R. 6, 42, 457, 484-85, 674, 694, 697, 699-700, 923, 926, 931, 936, 939, 942, 947, 951, 953, 956, 959, 962, 965, 968, 975, 978, 983, 988, 991, 994, 999, 1003, 1006, 1009, 1012, 1021) (normal sensory examinations during the relevant period).

Finally, even if the ALJ erred in her evaluation of Dr. Kareti's opinion or failed to include a limitation to occasional feeling with the right arm/hand in the RFC, this error is harmless. The DOT specifically disclaims a feeling requirement for Claimant's past relevant work as an administrative assistant.[5] *See* 169.167-010, 1991 WL 647424 ("Handling: Frequently - Exists from 1/3 to 2/3 of the time[,] Fingering: Frequently - Exists from 1/3 to 2/3 of the time[,] Feeling: Not Present - Activity or condition does not exist[.]"). Any perceived error in the ALJ's analysis, therefore, would not change the outcome of the case and provides no basis for remand here. *McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2011). And although Claimant suggests that the ALJ had a duty to investigate an "ambiguity around what is contemplated by a limitation in

---

[5] The Dictionary of Occupational Titles (DOT) generally defines Claimant's past administrative assistant position as follows:

"Aids executive in staff capacity by coordinating office services, such as personnel, budget preparation and control, housekeeping, records control, and special management studies: Studies management methods in order to improve workflow, simplify reporting procedures, or implement cost reductions. Analyzes unit operating practices, such as recordkeeping systems, forms control, office layout, suggestion systems, personnel and budgetary requirements, and performance standards to create new systems or revise established procedures. Analyzes jobs to delimit position responsibilities for use in wage and salary adjustments, promotions, and evaluation of workflow. Studies methods of improving work measurements or performance standards. Coordinates collection and preparation of operating reports, such as time-and-attendance records, terminations, new hires, transfers, budget expenditures, and statistical records of performance data. Prepares reports including conclusions and recommendations for solution of administrative problems. Issues and interprets operating policies. Reviews and answers correspondence. May assist in preparation of budget needs and annual reports of organization. May interview job applicants, conduct orientation of new employees, and plan training programs. May direct services, such as maintenance, repair, supplies, mail, and files. May compile, store, and retrieve management data, using computer." DOT 169.167-010, 1991 WL 647424.

feeling," there is no ambiguity here. [ECF No. 32] at 4. The ALJ properly evaluated Dr. Kareti's opinion in the context of the broader medical record and other opinion testimony and determined that a feeling limitation was not supportable. And even had such a limitation been incorporated into Claimant's RFC, it would not have affected Claimant's ability to perform her past work as an administrative assistant. Remand is therefore not required.

## CONCLUSION

For the reasons discussed above, Claimant's Motion for Summary Judgment [ECF No. 20] is denied, and the Commissioner's Motion [ECF No. 28] is granted.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated:   May 24, 2021